Good morning everyone and welcome. Our first case this morning is United States v. Groce, I think it's pronounced. Case number 163845. May it please the court. Michelle Partham on behalf of Appellant Monta Groce. The district court committed numerous reversible errors in this case. You have a low, well modulated voice and I have a ten ears. I'll speak up your honor. The district court committed numerous reversible errors in this case. Today I would like to focus on four of them. First, the government concedes that Groce was wrongfully convicted for retaliation and that charge became a vehicle for the admission of highly prejudicial evidence that very well may have tainted the jury's consideration of the separate sex trafficking counts. Second, the court violated Groce's right to confront the key witness against him. Third, the erroneous, reckless disregard instruction effectively omitted the mens rea element of the sex trafficking charges. And fourth, highly prejudicial evidence of other bad acts was admitted and may have prejudiced the jury's consideration of the sex trafficking counts. For these and other reasons, Mr. Groce's conviction should be reversed. I'd like to turn first to the retaliation conviction. Now the government concedes that this conviction should be vacated because the jury instructions failed to include a required element of the offense and there was no evidence presented at trial to support that element. But vacating this count alone is not enough to ameliorate the harm that was done because this charge became the vehicle for admission of highly prejudicial evidence that very well may have tainted the jury's consideration of the separate sex trafficking charges. Well, there was nothing wrong with the charge. There was an error in the jury instructions. There was an error in the instructions, but the government now also concedes that there was no evidence presented during trial to support that necessary element. Well, that doesn't mean that there's something wrong with the charge. That means there's something wrong with the proofs. So I'm not sure where this argument about collateral damage is going. Clearly the count has to be vacated. There was instructional error that's fatal to the count and a failure of proof that's also fatal. So we can't find harmless error, but the collateral damage argument isn't going anywhere if there's nothing wrong with the charge. We just don't know whether the victim reported this abuse to a federal agent or a state agent.  But if the government had proof that Tischer had cooperated with federal law enforcement agents, presumably that proof would have been presented during the trial, and it never was. And so based on the record we have, this is a charge that never should have been brought. Without cooperation with federal law enforcement, there is no federal crime. But the evidence would have been admissible anyway as part of the course of conduct of this crime. This was an ongoing conspiracy. I disagree, Your Honor. This encounter during which Gross retaliated against Tischer was the very last interaction that he ever had with her. She was asked whether she had any contact with Gross following this incident, and she said that she had not apart from him attempting to contact her on Facebook, and that's in docket 124 at page 116. Why does that make it inadmissible? Because it was the last encounter? Well, in this case it's possible, conceivably, that the district court could have found that this evidence was relevant to prove the conspiracy, or more particularly the sex trafficking counts, because the conspiracy pertained to transporting people across state lines for prostitution and didn't require force. And so this could have conceivably been thought relevant to the sex trafficking counts. However, the fact that it occurred after any acts of prostitution would have been something that the district court would have had to give strong consideration to in considering whether the probative value of this evidence outweighed the substantial prejudice, because this was the most graphic and disturbing testimony that the jury heard during the entire trial. Witnesses testified that Gross brutally attacked Tischer, beating her to the point that she thought she was going to die, to the point that she lost consciousness and defecated on herself, and her head swelled up like a pumpkin. The jury heard nothing close to this at any other point during the trial. This was a watershed moment in terms of the evidence because it was so inflammatory and so disturbing. And so there's a very real possibility that the jury relied upon this evidence in convicting Gross for the separate sex trafficking counts, and that possibility was exacerbated by the way the government argued this evidence during its closing. In reviewing the evidence of violence, it described this retaliation incident and told the jury that this was the, quote, worst evidence of violence that Gross had perpetrated against the victims, and told the jury that it was an example of force upon which they could rely in convicting him for trafficking. So there is a real risk that this was something that the jury did rely upon in convicting Gross, and this was evidence that, on this record, the jury never should have heard. I'd like to turn now to the second issue, which is that the district court violated Gross's right to confront the key witness against him in this case. Now, prior to trial, the district court ruled that evidence of the victim's prostitution history before meeting Gross would be inadmissible. But during the government's direct examination of Marika Sturr, its key and first witness in terms of the victims who were trafficked, the government opened the door to this evidence by eliciting substantial testimony from Sturr that she had never previously engaged in prostitution. At the government's invitation, Sturr testified that she did not know how to set up a prostitution call, did not know how much to charge, had never set them up on her own, and had never taken calls for anyone else. And Gross informed the court that Sturr had created an impression that Gross had groomed her into participating in prostitution for the first time and that there would be testimony from another witness who would contradict Sturr's testimony. But the district court refused to allow Gross to cross-examine Sturr on the truthfulness of that testimony. And in totally foreclosing Gross's ability to expose to the jury that Sturr's testimony may have been untruthful on this point. I think that's an overstatement of what the court did. The court at sidebar said we're not going to get into this now, and then after the next break, which I think was an overnight break, raised the issue again and clarified that if there was impeachment evidence, the defendant could enter it. And as far as I can tell from the record, there was never an effort to recall Marika Sturr. The defendant chose to admit this impeachment evidence through another witness. Your Honor, the defendant did not attempt to recall Marika Sturr. That's correct. Was there any impediment to that? Well, I think the district court's ruling during the sidebar in the middle of Marika Sturr's cross-examination made clear that the court was not going to permit cross-examination on this subject. No, he walked it back. Judge Connolly walked it back at the break and said, no, if there's impeachment evidence, have at it. Recognized that she testified unequivocally. She had never engaged in other acts of prostitution and therefore opened the door on her direct testimony. The district court did acknowledge that the door had been opened and that impeachment evidence would be permissible, but it did not indicate that there would be an opportunity, for example, to recall Ms. Sturr or that it would permit cross-examination of Ms. Sturr on this issue. What the district court indicated with that ruling, consistent with Gross's representation that another witness would contradict that testimony, is that impeachment through that separate witness would be permissible. Nothing in the district court's conversation with counsel at that point indicated that the district court was willing to overrule its refusal to allow cross-examination of Sturr on this point. And this violated Gross's right to confront the key witness against him. Gross was unable to show the jury during Sturr's testimony. What the judge actually said during her testimony is, well, we're going to have to discuss that at another time. We're not going to get into it with the witness now, meaning let's do it later. And the defense never came back to it later, outside of the introduction of the testimony through another witness. There was nothing stopping the defense from recalling Marika Sturr to impeach her, or at least attempt an impeachment. What the district court's indication there was is that we're not going to get into it with this witness. We're not going to do it now, meaning you can do it later. And then the court came back to the matter at the break and clarified that he recognized that there was an opportunity for impeachment because the government had opened the door. And so there was no impediment to recalling the witness and then putting on the defense witness, who would also constitute an impeaching witness. Your Honor, I just think that there's nothing in what the district court said that indicated that it was going to permit recalling Ms. Sturr and cross-examining Ms. Sturr. It refused to permit that in the moment and said we're not. The judge did not refuse, plainly did not refuse to permit that. He said, no, we're just not going to get into it now, meaning we need to talk about it later because I need to know what you're asking. And then there was a discussion at the break. That often happens during the course of trial. If the judge can't sort it out at sidebar, parties will come back to it later and then revisit the matter. And the judge plainly indicated he was willing to permit this. But he did not indicate that while Ms. Sturr was on the stand. And that's customary in the flow of trial, that the judge would postpone it until a break and air it more completely than can be done at sidebar. And the judge plainly indicated a recognition that there was an impeachment opportunity, said the government opened the door to this, and then the defense never came back to it. Respectfully, Your Honor, I disagree that the district court's instructions can be interpreted that way. I believe the district court made clear that he was not going to permit cross-examination of Sturr on this topic. But I'd like to now turn to the third issue, which is that the erroneous instruction on reckless disregard lowered the mens rea for the sex trafficking charges to such a degree that it effectively omitted this element of the offense. The jury was instructed that it could convict Gross if he was aware of, but consciously or carelessly disregarded, facts and circumstances that would reveal that force, threats, or coercion would be used. The government concedes that this instruction erroneously allowed the jury to convict for mere negligence because it was given an option of convicting if it merely found that Gross carelessly disregarded those facts. Additionally, there's a separate problem with this instruction, which is that it fails to incorporate the components of criminal recklessness required by Farmer v. Brennan that the defendant have drawn, actually subjectively drawn the inference that there was a substantial risk of harm. Why isn't this argument waived? Gross did not waive this argument. The government makes that argument relying on the fact that Gross indicated no objection in response to the 22 pages of the proposed jury instructions that the court put forth. Well, actually it went beyond that. The defense submitted proposed jury instructions and then at the instructions conference ultimately indicated no objection to the court's rulings on the proposed jury instructions and accepted the judge's proposed instructions. And then there was an additional discussion of an argument unrelated to this particular instruction about the mens rea for this count, and then there was another indication that after a further revision the defense had no objection. So this goes beyond a sort of rote consent to the court's proposed instructions. There was actually a dialogue. There was not a dialogue on this particular element of the offense. Not on this particular instruction, right. But if there's a dialogue on the instructions more broadly and the defense takes no opportunity to correct a mistaken instruction or does not take advantage of an opportunity to correct a mistaken instruction, then there's a waiver. Your Honor, I disagree that the facts here reflect a knowing and intentional relinquishment of a known right. What this reflects is that this error was simply missed by both parties. The government today concedes that it was an error, and we're certainly not suggesting that the government was aware of the error at the time. The government missed the error and Gross missed the error, and there's nothing in the record that would indicate that there was some intentional strategic decision made to forego. There doesn't need to be a strategic decision. A waiver can be found when there is an opportunity to object and a substantial opportunity and an actual dialogue about the jury instructions, and there's no effort made to lodge an objection to the erroneous instruction. What this court requires for waiver is a knowing and intentional relinquishment, and the fact that there was discussion on some component of jury instructions that spanned 22 pages, I don't think comes close to revealing a knowing and intentional relinquishment of this particular error. If it had said and instead of or, that would be okay? That would fix part of the problem, Your Honor. That would have not allowed the jury to convict Gross simply for carelessly ignoring facts and circumstances. Well, carelessly shouldn't be in this instruction at all, so it's plainly erroneous, but I'm not sure that it matters in the context of this case because we're talking about the defendant's own actions, and you can't carelessly disregard your own actions. The carelessly idea in this mistaken instruction is when somebody else is doing coercion. Here it's the defendant himself who is doing the coercion, and so this is just a red herring in the context of this case. I disagree, Your Honor. What the instructions allowed the jury to convict is if they found that Gross was aware of underlying facts and circumstances but carelessly disregarded them. So, for example, one of the government's chief theories in this case was that Gross manipulated the women's access to heroin, and a predicate fact for that theory is that the women were heroin addicts. So if the jury found that Gross was aware of their heroin addiction but carelessly disregarded it, that would be enough to convict. There is no other possible conclusion on this record. That he carelessly disregarded? No, that he was well aware of their heroin addiction and was preying on them as a consequence of that deliberately. There is just no other interpretation. This is a completely harmless error. I disagree, Your Honor. I think in particular it's important to focus on Amanda Ryan with respect to this. The facts with Amanda Ryan were far weaker than with the other victims. She's someone who had total agency over her circumstances, engaged in prostitution of her own accord, and the government's case hinged on one incident. And so with respect to her in particular, I don't think it can be said that this error was harmless. And I'd like to reserve the balance of my time for rebuttal. Thank you. Thank you. Ms. Nash. May it please the Court. Lisa Nash on behalf of the United States. The defendant was convicted on eight counts, four of which he challenges on appeal. His three sex trafficking convictions related to Lisa Tischer, Marika Stirrer, and Amanda Ryan, and his retaliation conviction related to Lisa Tischer. The government concedes that the defendant's conviction for retaliation must be vacated, but urges the Court to affirm the defendant's convictions for sex trafficking because the defendant has either waived his challenges or cannot satisfy the demanding standards of review, and the overwhelming evidence presented at trial demonstrates that the defendant systematically abused, threatened, and coerced the three victims to cause them to engage in prostitution for his financial gain. I'll begin by talking about the Confrontation Clause issue. The defendant concedes that this Court's decision in the United States against Carson forecloses his argument that his convictions for sex trafficking related to Lisa Tischer and Amanda Ryan must be vacated because he was not permitted to introduce evidence of the victim's prior prostitution. So I begin with the defendant's continued challenge that the District Court's limitation on his ability to cross-examine Marika Stirrer about her alleged prior prostitution was error. The District Court acted well within its broad discretion to limit this line of inquiry. The Confrontation Clause requires only that the defendant have a reasonable opportunity to impeach a witness's credibility, and he had ample opportunity to do so here. The District Court permitted the defendant to cross-examine Stirrer on a range of topics that reflected on her credibility, including her past arrests, prior incarceration, past drug addiction, and meetings with the government to prepare for her testimony. Moreover, the District Court permitted the defendant to question a different witness, Brandy Eddy, who contradicted Stirrer's statements that she had never engaged in prior prostitution. And finally, the District Court was reasonably concerned that excessive discussion of Stirrer's alleged prior prostitution, which is irrelevant to refuting the elements of Section 1591, would confuse the jury about the relevant issues in the case. And as Your Honor pointed out, the defendant didn't aggressively pursue this line of inquiry in the District Court. After Stirrer had finished testifying and had left the stand, the District Court explained to the parties that it believed that the government had opened the door on Stirrer's prior prostitution and would permit the defendant to have an opportunity to challenge that testimony. At that time, the defendant could have requested to recall Stirrer, and he chose not to do so. Nor did he ask the District Court for permission to put on his own witness that would contradict Stirrer's testimony. Instead, the defendant appeared satisfied to cross-examine the government's witness, Brandy Eddy, about Stirrer's alleged prior prostitution. You think he's not recalling because he didn't hear what they had to say? It's possible, Your Honor. However, I think in this situation, what we really have here is that the defendant believed that by cross-examining Brandy Eddy, he would have reasonable opportunity to impeach Marika Stirrer on this point. And the fact is the jury already heard ample testimony that would have permitted it to conclude that Marika Stirrer was not a credible witness. Marika Stirrer testified that she had cut her ankle bracelet off, her GPS monitor ankle bracelet, and was on the run from law enforcement when she went to live with the defendant. And she testified that much of her memory about the relevant events was hazy because of her heavy drug use. So why the defendant chose not to recall Stirrer, I certainly couldn't say for certain, but I think on this record it's clear that the defendant thought he had ample opportunity to impeach Stirrer's credibility. Turning to the issue of the jury instruction, the defendant weighed this challenge to the reckless disregard definition by affirmatively stating that he had no further objections to the text of the instruction on at least three occasions when it was at issue. And I think this court's decision in the United States against Carson provides a meaningful point of comparison on the waiver issue. In that case, the same erroneous jury instruction was proposed in the district court, and the defendant raised a specific objection to it, saying that it, quote, and we believe eliminates mens rea. This court said that even with that objection, the defendant's challenge to the instruction was a close call on forfeiture because the objection wasn't raised with a requisite level of specificity. Comparing that to our case, it's difficult to see how the defendant's repeated statements that he had no objection to the instruction could constitute forfeiture. But even if the defendant didn't waive his challenge here, the defendant cannot show that his substantial rights were violated. There's no reasonable probability that absent this error in the jury instruction, the jury would have reached a different verdict. The sex trafficking statute contains two theories of conviction, one that the defendant knows, or two that the defendant acts in reckless disregard that means of force, threats of force, or coercion will cause a victim to engage in prostitution. And in Carson, this court pointed out that an instructional error on the reckless disregard definition does not impact the defendant's substantial rights where the instructions include the proper definition of knowingly, and the overwhelming evidence supports a verdict under that definition. And as already discussed, overwhelming evidence here supported the jury's verdict, and the jury was properly instructed on the knowingly theory of conviction. It is hard to imagine how the defendant could have not known of his own conduct. As Judge Sykes pointed out, the reckless disregard portion of the statute is designed to get at a third party, not the person engaging in the forcible or coercive conduct. I'll next address the issue of the retaliation evidence. The defendant states that the introduction of the retaliation evidence prejudiced him on the sex trafficking counts, but the defendant weighed this argument on appeal by failing to raise it in his opening brief, which directly addressed the retaliation charge and the fact that it needed to be vacated. However, the defendant never discussed that any kind of evidence that came in to prove the retaliation would have prejudiced the jury on the sex trafficking charges. But even if the argument isn't waived, Tischer's testimony about the events in April 2014 was evidence of Count 8, which was an attempted sex trafficking charge related to Tischer. As evidence of attempted sex trafficking, it was highly relevant and would have been introduced to prove the charge whether or not the defendant had been charged with retaliation. Moreover, we can assume that the jury only considered evidence to prove offenses within the time periods relevant to each count. For example, the jury would not have acquitted the defendant on Count 8 if it believed that the evidence from 2012 and 2013 overflowed to prove that count. If the panel has no further questions... Well, what about retaliation? Aren't you conceding that one? Correct. So the government concedes that the retaliation conviction needs to be vacated and the case remanded for resentencing. So we do. You concede remand for resentencing. Correct. If the panel has no further questions, the government will rest on its brief. Thank you. Ms. Perkins, you've got two minutes left. I'd like to return briefly to the government's argument that Gross waived his objection to the erroneous jury instructions and just make the point that this case is similar to United States v. Bursino in which this court... The defendant in that case had said there was no objection to the entirety of the jury instructions that were put forth. And the court held here that that did not appear to be a knowing and intentional relinquishment of the argument the defendant then raised on appeal. And that's the situation that we have here. Gross's statement of no objection to the entirety of the instructions simply did not indicate a knowing and intentional waiver of the argument. Is there no objection to any instruction or correction, discussion? Gross did not raise any objection to the instructions. Well, on the merits, assuming we get to the merits, we're on plain error review. Even if this is a forfeiture and not a waiver, and the confrontation clause argument in this context is sort of a balancing test, and you haven't addressed that yet, perhaps you'd like to use a moment to do that. I'm sorry, Your Honor, the question is about the confrontation clause argument? Yes. I kept you busy with arguments about the waiver, so you might want to take a moment to address the merits. So with respect to the confrontation clause, the way this court analyzes harmlessness is it has to assume that the fully damaging potential of the cross-examination was realized and then ask whether the refusal to permit cross-examination was nevertheless harmless. And in this case, the fully realized damage of the cross-examination that Gross wanted would have been the revelation that Sturr had lied to the jury during her direct testimony. The damage of this to the government's case would have been enormous. Sturr was the government's key witness. She gave the most extensive testimony of any witness during the course of the trial, was the first of the trafficking victims to testify, and really framed these issues for the jury. But there was a lot of impeachment evidence admitted on this point in particular, certainly, through the cross-examination of the witness. I can't remember her first name, Eddie. But also her other vulnerabilities in terms of her credibility, her heroin use, her criminal history, et cetera. So why doesn't the balance come out in favor of harmlessness here? If I may briefly respond. This case is similar to Davis v. Alaska. And in that case, defense counsel was permitted to question the witness on various topics pertaining to the witness's credibility. And nevertheless, the court held there was a confrontation clause error because the defense counsel was not able to question the witness on the particular point for which the witness gave arguably untruthful testimony. And so here, the fact that there were questions going to Sturr's general credibility is not enough. And briefly with respect to Eddie's testimony, because the district court refused to allow Gross to argue in closing that Eddie's testimony showed Sturr's testimony to be untruthful, it really eliminated whatever value Eddie's testimony may have had. And in addition, the jury was prevented from seeing Sturr's demeanor during cross-examination on this point and the way she reacted, which was crucial information it needed to determine whether Sturr or Eddie were telling the truth. Thank you. Thank you. Our thanks to both counsel and the cases taken under advisement.